Okay we can go to United States v. Williams. May it please the court, Gail Ivins appearing on behalf of defendant appellant David Williams. Presented today for the court we have kind of a big record but a fairly narrow issue and that has to do with the standard under Rule 11 D2B and what is a fair and just reason to allow withdrawal of a guilty plea. And as I understand it it's only for certain of the plea. It's not for withdrawing the refusal to allow him to withdraw the plea for tax evasion. That's correct your honor I did not challenge those on appeal. And you don't challenge that there was sufficient evidence to support that guilty plea? That there was sufficient evidence in the entire record? I do not challenge that. And also a list of things I don't challenge are the credibility findings made by Judge Fisher with respect to the testimony of the two defense attorneys William and Gabriel Cohan. Although I don't challenge her credibility findings I do think that the evidence of what they did say about what they did know and their interpretation of the availability defenses is relevant to the issues before the court today. All right could you tell us exactly what defense you think existed and wasn't encompassed within the record as a whole? First of all are you contending that that the judge shouldn't have relied on the four days of testimony? Correct in terms of the narrow question. Why not? I mean is there lots of case law that says that he can look at the whole record? For purposes of deciding if standing alone there's an adequacy in terms of the factual basis for a plea when the question in the court of appeal is was it okay is that plea okay? Was what? Was the plea okay right? Okay so so I get a case on appeal and I look at the plea agreement and the record before the court and the colloquy with the defendant and I say hey there's not enough there in the for a factual basis. This court says counsel we're looking at the entire record. That is a very specific analysis when we're challenging directly the sufficiency of the plea. This is a different question. This question is was there a fair and just reason to allow the plea to be withdrawn? And if we're looking at that I think we should look at for purposes of the question of whether with proper advice and with the right information he would have chosen to go to trial we should look at what was in the plea agreement. But what's underlying this is the lawyers belief and communication to him that he had no viable defense and for that purpose why doesn't one look at the whole record? For the question of whether he did or did not have a viable defense then I think the judge is looking at the entire record including the testimony of the two lawyers obviously and what they what they did at trial what they said in their opening statement. And so for purposes of that the lawyers clearly based on their own statements in the 302 which the court accepted as their direct testimony, they did not ever consider or understand that by the terms of the private placement memo for SSIF the money could be transferred to a real estate company without having to secure that with a recorded lien. Well I understand the part about the security but what about everything and they I mean certainly the client knew. He signed a plea agreement that I mean he knew a lot I mean his testimony is so all over the place. So are you relying solely principally or somewhat on this lien question? Somewhat on the lien question yes your honor that there is one of the things that that is different right when we're looking at the question of whether there's a fair and just reason to withdraw the plea one of the things that the courts have said is there should be something different right there should be something different than what happened at the time of the plea there should be something new and different we're now looking at not just I changed my mind I've had a change of heart I wish I hadn't done it and one thing that is new and different at the time of the motion to withdraw the plea is the fact that we now know that this Well except that it was sitting there in everybody's face with regard to this actual document. That's true but everyone accepted that it was true at the time so the fact that they were wrong did not come out until after. It doesn't appear that it appears that the lawyers advice was based on what happened at the trial which had nothing to do with this problem but with the fact that his explanation for why he had this house and why he got was taking all this money out was disproven by witnesses so at ER 469 William Cohen is reported to have said that he thought you know that this was the you know that the PPM was just not going to help him because what the court just said but there is nothing in the record of their understanding either Gabriel or William Cohen where they understand this idea that if when the money went from National Finance Bank or whatever to the account First Republic account of SSIF if if if there was no intent to defraud at that moment then there's no guilt and then I looked at that in terms of the time the the the actual wiretaps wire not wiretaps I mean wires some of them were the payments by investors and some of them were after for example this big you know expensive party and after we moved into the house and after we spent all the money right so so his notion because I was at first somewhat taken with his concerns about the fact that he what he said was at some point I developed but the point was clearly before the wires so the three counts that he pled guilty to three four and five all occurred in January of 2008 right and and wasn't that within he moving to when did he move into the house he put the earnest money down in June about the same time he opened up of 2007 of 2007 and and when did he move all the furniture in and all that he's definitely doing all that but that that piece of it so if if when he is transferring the money from SSF to WFG and if if we accept my position in the briefing that because it owned real estate it's a real estate company and so well I mean it's a little far-fetched first of all what real estate did it own pardon what real estate did it own Glenside wasn't that highly debatable whether it owned it because he sometimes he represented that he owned it and sometimes he represented it owned it. It had been quit claimed to WFG so WFG was the owner of. Yeah but then he would he would use it for credit purposes and so on as his own. There is no question that there. The bottom line being that this was an alter ego essentially. That is certainly what Judge Fischer found but the question here is not the sufficiency of the government's evidence the question is whether there's a fair and just reason to allow withdrawal of the plea and to do that we have to show you know something within the line of things that this court has it has accepted as a reasons to allow to withdraw the plea and one of those would be in this case the lawyers did not understand that there was a defense based on the fact that the transfers from SSIF to Williams Financial Group were technically to a real estate company. Now the court is right that there is a lot of misuse of money that happens in this case but we are focused on three counts of wire fraud and for those three counts of wire fraud it matters. Why exactly? Because if his statement in the guilty plea doesn't give a time the government's argued that well even if he decided later. Yes but the evidence did and the did give a time. I mean first of all the indictment gives a time as to when the wires. Starting no later than June 2007. And the evidence at the trial showed that he was using this money profligately before these wire transfers. So the sometime I can't understand why it matters. If at the time that he transferred that money to Williams Financial Group which was you know memorialized with the promissory notes at I think it's 626 in the. I thought that wasn't ever recorded. Right but they exist and they were exhibits in the government's case and they're in the excerpt of record. So if at the time he's transferring he's transferring it as a loan to Williams Financial Group at that point what he does with it from Williams Financial Group you know it's problematic but it is not necessarily wire fraud because there is no indication that at the time he's doing that he wasn't doing it with the intent to develop one or more of these properties for the benefit of the investors. When did he do that? When did he do? When did he transfer the money from SSIF? All during that time period. Right well so there is evidence that he was doing it because at the same time he was taking all this money out you know millions of dollars for himself. Yes and if I were arguing sufficiency of the evidence I would clearly lose. It's not about sufficiency of the evidence. It's about his intent. I.e. he was simultaneously putting money in and taking it out for himself and and and that's not consistent with the offer. And if and in the motion for new trial they've made an argument that had he known that there was a defense available under the PPM that he would not have pled guilty and the question is is that a sufficient reason? I see my time is all right thank you very much. Thank you. Good morning, Your Honors. May it please the court. Carolyn Small on behalf of the United States. During the defendant's Rule 11 colloquy in this case he said he understood the nature of the charges against him. He understood the possible consequences of a plea including the maximum sentence that he could receive and he said that he was pleading guilty because he did all the things described in the fact section of the plea agreement and he also said that he was quote very satisfied with the representation that was provided by his trial attorneys and that he believed that they fully considered any defense that he may have to the charges. Now when the defendant moved to withdraw his plea he went back on pretty much everything he said during the plea colloquy. He said there wasn't a factual basis for the plea and he said that his trial attorneys coerced him into pleading guilty and so the district court held a two-day evidentiary hearing on the defendant's motion and the district court discredited all of the factual assertions that were underlying the defendant's motion to withdraw his plea. We asked what he was told by the lawyers. I'm sorry. As to what he was told by the lawyers. Correct. Except to the extent that the lawyers told him that their defense strategy that they had planned was not likely to be persuasive to a jury the court found that the lawyers probably had told him that and that that was likely good advice under the circumstances but the court found that the lawyers had not otherwise coerced him to plead guilty. In fact the trial attorneys the court found investigated the defendant's defense based on the PPM. In fact they flew out to New York to speak with the attorney that drafted it and that the trial attorneys didn't advance it because they couldn't get corroboration on key points. The court also found that the trial attorneys were fully prepared for trial as evidenced by the fact that they had gone to trial for four days, made opening statements, brought pre-trial motions, cross-examined witnesses and the court found as I mentioned that the trial attorneys had appropriately advised the defendant that the defense case that they had planned to put forth probably wasn't going to be persuasive in light of the government's witnesses who testified extensively that the Woodbridge property that the defendant had purchased was for his own personal use and not for an investment purpose. And it wasn't purchased. It was never purchased Correct. That he had attempted to acquire. But my understanding is that the contention that this was a real estate age company is based not on the Woodbridge property but on a Glenside property. Right it's based on the the WFG holding company that the defendant had formed which held a piece of real estate and so I what I take the defense is that we should only look to the point that the defendant transferred the money from the investors and into the WFG account and we should look no further than that because WFG was a real estate company because it owned a single piece of real estate and that's where the inquiry ends. That's my understanding of what the purported defense is. But of course here we have overwhelming evidence that the defendant immediately transferred the money from that holding company to personal expenses including the Woodbridge property, including his own. He paid his personal American Express expenses. He paid for mortgage on his own property that he and his family were living in I believe on Dillinge. And so that and that is not a defense that the trial attorneys were completely unaware of. They said they testified about that at the district court that they had they were asked about this defense and they said we didn't see that as as any real type of defense that you can put money temporarily into a shell what it was essentially a shell company and then they didn't think that that was an argument that was really defense to the wire fraud that was charged. So before us the claim is that this was a failure to understand the defense that transferring the money to WFG constituted a loan to a real estate company right? Correct. But in the district court that's not the defense that's not what they argued is it? No that's right and so in the district court what the defendant argued was that the trial attorneys had coerced him into pleading guilty and as part of that coercion argument they said a number of things that the sentencing had been grossly misrepresented by the trial attorneys the sentencing exposure they said that they they had given up on the defendants or the trial attorneys had given up on the defendants they weren't pursuing any defenses to get for him they didn't pursue this PPM defense and all of that was really part of the coercion argument and that is what the evidentiary hearing was geared towards that is what the district courts decision was geared towards. So if I I have really then a plain-air standard to apply to this issue don't I? Yes. So it wasn't argued? Correct yes. What is that what is the burden that the defense has in order to if you will withdraw the plea? Do you mean I don't know if it's I would imagine it's preponderance of the evidence. Well don't they have to show that a plausibly motivated reasonable person in the defendant's position would not have pleaded guilty? Oh yes that is the standard when when the defendant is raising an argument that they were misadvised the standard is that they have to demonstrate that proper legal  Why would this not fit that? I mean this well first there's this threshold factual issue about whether the defendant was in fact misadvised and I think there are factual findings here. Well he was misadvised to the degree that everybody seemed to think that there was an error in the PPM about the lien and there wasn't. Right there was a factual error in the PPM that was not in the PPM in the indictment in the plea colloquy and so on. Right and that was really an error that was sort of ancillary to the core of the fraud so there were a number of. So the main fact of the fraud is what? The main fact of the fraud is that the defendant collected money from prospective investors told the investors that this money was going to be used to invest either directly or indirectly in real estate or real estate companies and then instead of doing that the defendant took the money and spent it on himself. So you're suggesting then that the PPM issue is I think your word was ancillary? Right ancillary yes it is it there were a number of misrepresentations that were alleged in the indictment and that were incorporated into the plea agreement there were a number of things that the plea agreement went through that said the defendant made all of these misrepresentations. One of those misrepresentations was this error in the. So how do I determine given the standard of review that this would not have changed his mind? Well I think the court so the error was that the the money the investors money would be secured by the assets of the Sherwood fund. So in some way they were supposed to be secured whether it was by a lien on the investment property or lien on the assets. I don't know that that makes a difference. It seems to make a big difference because the assets of the investment fund may dissipate which they did. I understand this was right at the time of the crash but you still have a building there which has some value. Seems like there's a difference between zero and something. Right and I mean that's true but I mean really this that whole issue again was really I think so I think getting back to Judge Smith's question about whether it would motivate somebody to plead guilty I guess the question then is would it motivate somebody who's been through four days of trial and has a mountain of evidence that they did not use the money that was taken to make any investments in real estate but there is sort of this side issue that they could have said well the PPM said it should have been secured by the assets of the Sherwood fund which it wasn't secured in any way it wasn't no none of the promissory notes were ever recorded. I don't think under those facts the court I think the court could say as a legal matter that it would not have plausibly motivated a reasonable person. I understand his argument it is leaving this part aside it's that that this was a real estate company because it owned this one house which I gather is debatable but it's at least debatable whether it owned that house. Right. And he says with that house what was security for whatever he was doing with the money in other words if this entity was loaning him money and he was spending all this money even profligately because the house at that point could if sold would bring that money back there was no problem that's that is my understanding of the core of the argument. Well I think that the district court really hit the nail on the head when it said that doesn't the fact that the investors may be potentially could have recovered despite the defendants fraud that doesn't mean that the defendant didn't commit fraud it just means that there could have been a potential that they could have recovered their money anyway and so just the mere fact that there was this potential collateral I mean the point of an investment is not just to recover on the collateral in the event that you're defrauded or that your investment isn't used in the way that you've intended. Does he claim that the money that he took out of WRG or whatever it's called was alone to him? Is that what he was claiming? I think he said that the money was a loan from the investors and he it was loaned to WFG but then he clearly used it for himself I don't know that he ever said that the money that he took out was a loan? No that's not my understanding is it's just from the no I don't think that he ever said. Well then what difference would that could the security make anyway? I mean if he couldn't pay it back that the money that he was taking he never said he was going to pay the money back did he ever say he was going to pay back the money that he took out? No I mean our position is that this was in a fraudulent appropriation. I know it's your position but I'm trying to figure out what his position is. I don't think he ever said that he intended to pay the money back once it came to him and he was spending it on this interior designer and on a personal assistant. I don't I don't I think he just called it a loan from that first transfer from the investors to WFG. I don't think he ever said he intended to pay it back once it moved from WFG to his own pockets. Okay thank you very much. In 2007 I'm sure he thought that he was going to buy the 7.2 million dollar home next door to Miley Cyrus for 6.3 million and make a killing but that doesn't really matter what matters is that the can live in it not sell it. And and in the SEC testimony he said that hadn't been decided and you know he bought he bought Glenside personally and then quick claimed it to WFG. I mean the facts are sort of all over the place. He obviously could not have been living in all the houses he was buying and they would have been sold or rented and they would have lived in one of them and if he had had to sell the Woodside property then he would have sold that moved back to Dilling but the problem is before all of that got played out you know we had the crash and so we have all those bad things that happen. I don't understand just as a walkthrough leaving aside the mistake about the lien how he thought that taking all this money out of the the intermediary fund that it was it was a real estate company even though he was taking basically all of his assets out and spending it on himself. And leaving Glenside behind which was owned by Williams financial group which at the time was worth you know three or four. So what the point was that it said that the money he was taking out was not a loan it was just and and the representation was that it was gonna invest in real estate companies which and and 10% would be something else. Could be yes. So if you have a company that is 75% of it is going directly to him and 25% of it is the value of this house then why is that a real estate company? Right your honor I understand this is a very narrow and technical argument I'll do it one more time and and then I'll forgive you if you don't like it. But SSIF. That's the best part you're gonna forgive us. And I'll understand but SSIF is the is the entity which is the wire fraud is charged about the three counts that he pled to. And he invested in this company which it allows right an investment in a real estate company. Right. And WFT which is wholly owned by David Williams and which has one asset which is the Glenside property which is at the time worth. But isn't the easy answer that it's not a real estate company because 75% of it is going directly to him. But at the moment that this is all happening it has an asset that covers all of that so it's like. The question isn't the moment that that the money's going from SSIF to WRG the question is the what's charges wire fraud is the investment by the investors in SSIF and if he knows at the time that that wire is being transfer is occurring that in fact this thing that he's putting the money into isn't really a real estate company because it's really a front for him isn't at the end of everything. But it's not just that it's a front for him he wholly owns that company and it has one asset WFG. Well it has a second asset of a fund of money that he then takes out for himself. That's correct but to the extent that the loans were proper then he is the owner of the company took money out of that company that he wholly owns and then used it some for making improvements at Glenside which admittedly took forever to flip. Some for trying to purchase Woodbury the other property some for paying money. I mean he definitely used all that money some on real estate purposes and some not. But the narrow argument that I'm making in addition to the fact there was a false statement in the indictment and the plea agreement which I think gives us a basis to withdraw the plea based on the analysis that Judge Smith put forward that he might not have entered a plea had he understood that that was a incorrect statement is that the transfers to WFG which everyone said including his lawyers was wrong was actually permitted and that that's that's it that's what I have. All right thank you very much thank you both for your UNITED STATES V. WILLIAMS submitted moving on to
judges: Berzon, N.R. Smith, Nye